## WILSON v. CODY PETROLEUM CO.
### No. 696.

Circuit Court of Appeals, Tenth Circuit.
June 29, 1933.

Jay H. Hoag, of Duluth, Minn. (Lathers & Hoag and Theo. Hollister, all of Duluth, Minn., and Albert D. Walton, of Cheyenne, Wyo., on the brief), for appellant.

William E. Mullen, of Cheyenne, Wyo. (Paul R. Greever, of Cody, Wyo., on the brief), for appellee.

Before COTTERAL and McDERMOTT, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge.

On August 6, 1929, this suit was commenced in the court below. By an amended complaint filed on January 20, 1930, the Cody Petroleum Company was made a party defendant. Sam A. Wilson, plaintiff in the court below, appellant here, sought by the suit to obtain an accounting from all the defendants in the action, and also among other things "that the transfers of property heretofore made to the Cody Petroleum Company be set aside and that complainant be decreed to be the owner of an undivided one-third interest therein." The trial court in its decree ordered an accounting by some of the defendants and dismissed the action as to others—among these the Cody Petroleum Company. This appeal is prosecuted by appellant from the decree dismissing the action against the Cody Petroleum Company.

The following summary of facts as shown by the evidence will be sufficient to present the questions raised on the appeal and to lay the foundation for the decision of the case:

In January, 1924, appellant Wilson and one H. L. Lowe, named as a defendant but never served, entered into an oral agreement with the defendant S. C. Ferdig who had been operating in the Montana oil fields to engage in a joint adventure with him in the development of oil lands in that state. It was a part of the oral agreement that a common-law trust would be organized under and through which the business of the joint adventure at least at the outset would be carried on. On January 24, 1924, shortly after the parties had entered into the oral agreement above mentioned, Ferdig executed and later put on record in Montana a declaration signed by him creating a trust under the title of Sylvester Oil Company in which he named himself as the trustee. The recitals of this trust declaration were thereafter acted upon by Wilson, Lowe, and Ferdig in respect to their joint adventure, and on this appeal it must be accepted as expressing the agreement of the parties. The trust declaration provided, among other things, as follows:

"9. The trustee shall have full power to make any and all contracts for the development, operation, acquisition and disposition of the properties of the syndicate, and he shall have full general management, control and supervision over the business property and affairs of the syndicate."

"22. The said shareholders are not to have any legal title to the trust property itself, real or personal, held from time to time by the trustee, and, in special, they shall have no right to lands and appurtenances thereto belonging constituting the trust property, (out) their interest shall consist only of an interest in the money to arise from the sale or other disposition thereof by the trustee, as herein provided, and of the rights herein mentioned previously to such sale, and the shares shall be personal property carrying the rights, as herein set forth, of division of proceeds and profits and the other rights and matters concerning the trust property, and shall be transmissible and transferrable as personal estate."

"24. Whenever the said trustee deems it advisable and for the best interest of this syndicate that the same be organized as a corporation, he shall have full power and authority to organize such corporation in the place and stead of this syndicate without procuring the consent of the unit holders, and in which event the capital stock of such corporation shall be and remain the same fixed by this agreement and the unit holders shall receive and accept stock in such corporation on the same basis as they hold certificates in the syndicate."

Units in the trust were represented by written certificates in this form:

"Sylvester Oil Co.

(A Common Law Trust)

"This is to certify That ———— Is the holder of ———— unit(s) in the Sylvester Oil Co. (a common law Trust) with its principal place of business and main offices at Sunburst, State of Montana.

"By acceptance of this certificate the holder thereof accepts the terms and conditions of the Trust Agreement executed January 24, 1924.

"Witness My Signature, of the Trustees for the beneficiaries hereunder this ———— day of ————, 192—."

It will be observed that the trust declaration gave Ferdig practically unlimited and uncontrolled powers respecting the conduct of the business to be carried on under the trust and the disposition of the property ac-

quired in its prosecution. From the beginning Ferdig took exclusive control of the business; he organized corporations and named the directors; he named himself a director in all of them and became active manager of each; he shifted the holdings of the trust, Sylvester Oil Company, to the corporation first organized by him and later the holdings of this corporation to other corporations subsequently organized. In 1927 he organized two corporations to operate in the oil fields of Wyoming—the Yellowstone Company and the Cody Petroleum Company. The Yellowstone Company was a holding company. Ferdig transferred to it 65 per cent. of the stock of the Ferdig Company, one of his corporations previously operating actively in Montana; he transferred to it all the stock of the Cody Petroleum Company except three qualifying shares held by directors. Ferdig obtained and assigned oil permits and leases on lands in Wyoming to the Cody Petroleum Company—one of these called the Klindt lease. The lands covered by this lease appear to be the only property of any substantial value acquired by Ferdig in the Wyoming field, and will be referred to hereafter as the property involved in this litigation. The Cody Petroleum Company under Ferdig's management became deeply involved financially, and in June, 1929, at the direction of Ferdig, the Yellowstone Company sold all the stock of the Cody Petroleum Company to Cranfill-Reynolds Company of Texas. The consideration for the sale was the assumption and payment by Cranfill-Reynolds Company of the indebtedness of the Cody Petroleum Company amounting to about $1,000,000, and, in addition, a payment in cash of about $27,000 to the Yellowstone Company. This agreement of purchase and sale was entered into about the 1st of June, 1929, and the indebtedness assumed was paid or arranged for before the filing of this suit by plaintiff in the court below on August 6, 1929. The control of the Cody Petroleum Company was taken over by a board of directors named by the Cranfill-Reynolds Company in September, 1929. At the time the suit was commenced, plaintiff Wilson filed a lis pendens in which he claimed an interest in the Klindt lease and the lands covered by it. Except the constructive notice resulting from the filing of the lis pendens above mentioned, the Cranfill-Reynolds Company had no knowledge or information of plaintiff's claim until the Cody Petroleum Company in January, 1930, was made a party defendant in the action.

On this record appellant in his brief makes this rather startling contention: "It is therefore respectfully submitted that the above entitled cause should be reversed and remanded to the District Court with instructions to enter a decree in favor of appellant and against appellee, as prayed for in complainant's amended bill of complaint."

In his reply brief his contention is restated to be: "That the trial court should have found that the appellant is the owner of a third interest in the lands in question and that this court should now so find and modify the findings and judgment entered by the trial court accordingly."

The following propositions are advanced by him in support of these contentions: (1) That the Cody Petroleum Company, at the time it acquired the Klindt lease and lands from or through Ferdig, had notice and knowledge of appellant's interest therein; (2) that the Cody Petroleum Company, at the time the Cranfill-Reynolds Company acquired the stock of the Cody Petroleum Company from the Yellowstone Company, had notice and knowledge of appellant's interest in the Klindt lease and lands; that this knowledge having been acquired necessarily persisted and still persists unaffected by the change of control; (3) that the Cranfill-Reynolds Company purchased the stock of the Cody Petroleum Company, not its assets, and as stated in his brief: "That the corporation stands in the same position as though there had been no transfer of stock to the Cranfill-Reynolds Company. All of the testimony relating to the sale of this stock had no relevancy to the issues here involved. The property was the property of the corporation and belonged to it as a separate entity distinct from the stockholders."

The first and second propositions are based upon the rule that a corporation is charged with notice and knowledge of matters of which its managing officer or officers have notice or knowledge. Ferdig was president and manager of the Cody Petroleum Company with knowledge of plaintiff's rights in the joint adventure. The Cody company therefore had knowledge of his rights when it acquired the property in question from or through Ferdig.

These several doctrines are undoubtedly true as general propositions, and in proper cases are given effect both at law and in equity. It is also a rule in equity without exception that, to secure the application of these general propositions in any particular case, the plaintiff must be free from fault in respect to the matter in hand and himself willing to do equity. In putting these prop-

ositions forward as the basis of his right to a reversal or modification of the judgment of the trial court against him, he overlooks the effect of the practically unlimited and uncontrolled powers respecting the conduct of the business of the joint adventure conferred upon Ferdig by him under the terms of the trust declaration. He disregards the fact that, acting under the powers conferred, as already said, Ferdig from the beginning took exclusive control of the business, organized corporations, and named the directors; that he named himself a director in all of them and became active business manager of each; that he shifted the holdings of the trust, Sylvester Oil Company, to the corporation first organized by him and later the holdings of this corporation to other corporations subsequently organized; that he organized the Yellowstone Company and the Cody Petroleum Company to operate in the oil fields of Wyoming; that he transferred to the Yellowstone Company all of the stock of the Cody Company except three qualifying shares held by directors; that he obtained and assigned oil permits and leases of lands in Wyoming to the Cody Petroleum Company, including the Klindt lease; that he operated the Cody Petroleum Company and involved it in debt in excess of a million dollars; that in June, 1929, he consummated the deal with the Cranfill-Reynolds Company for the purpose of paying this indebtedness.

This latter transaction was in line with his former conduct of the business, and was within the scope of the authority conferred upon him in the trust declaration. The Cranfill-Reynolds Company dealt with him in this matter in utmost good faith and paid full value for the stock purchased by it, without any knowledge of the claim now asserted by the plaintiff. Notwithstanding this, appellant insists that he should be adjudged to be the owner of a one-third interest in the Klindt lease and lands free and clear of the indebtedness of the Cody Petroleum Company of over a million dollars paid by the Cranfill-Reynolds Company—a donation to him personally of one-third of one million dollars —because the Cranfill-Reynolds Company bought the stock rather than the assets of the Cody Petroleum Company and because the Cody Petroleum Company had notice and knowledge through Ferdig as its managing officer of appellant's interest in the Klindt lease and lands which notice and knowledge of the Cody Petroleum Company persists, notwithstanding the change of control, to the present time. The truth is all these corpora-

tions, including the Cody Petroleum Company, were mere shells organized by Ferdig, as the trial court found, "for the purpose of covering up the ownership of lands belonging to said joint adventure and to this complainant." But the truth is also that Ferdig was all the while complainant's agent clothed with the powers which he exercised, and, if a principal should ever be bound by the acts of his agent, surely this is a case for the application of the rule.

The trial court found that appellant was guilty of laches in failing to assert any claim against the assets of the Cody Petroleum Company until after its stock had been sold to an innocent purchaser. In this finding we concur.

The decree of the trial court should be affirmed, and it is so ordered.

At conference Judge COTTERAL favored the affirmance of this judgment. He died on April 22, 1933, before this opinion was prepared.